UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MELISSA KENNEDY

CIVIL ACTION

VERSUS

NUMBER 13-478-SCR

PARKVIEW BAPTIST SCHOOL, INC.


**<u>REASONS FOR RULING ON MOTION FOR SUMMARY JUDGMENT</u>**

Before the court is a Motion for Summary Judgment filed by the

defendant Parkview Baptist School, Inc. Record document number 36.

The motion is opposed.[1]

Based on a careful review of the competent summary judgment

evidence, the applicable law and the analysis that follows,[2] the

defendant has demonstrated that it is entitled to summary judgment

---

[1] Record document number 45. Defendant also filed a reply
memorandum. Record document number 51. Plaintiff filed a sur-
reply memorandum. Record document number 64.

[2] The analysis does not recite every argument or bit of
summary judgment evidence contained in the extensive summary
judgment record. However, all of the arguments and competent
summary judgment evidence submitted by the parties, even if not specifically
mentioned in the analysis, have been reviewed and carefully
considered.
    The court also notes that in some instances the plaintiff
simply cited her entire affidavit or deposition, or all of her
exhibits in support of an assertion that she presented sufficient
evidence to preclude summary judgment. The party opposing summary
judgment is required to identify specific evidence in the record
and to articulate the manner in which that evidence supports a
claim. Rule 56 does not impose on the court a duty to sift through
the record in search of evidence to support the plaintiff's
opposition to the defendant's summary judgment motion. *See*, *Adams
v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006); *Stults
v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

as to all claims brought by the plaintiff under the Age
Discrimination in Employment Act and the Americans with
Disabilities Act.

## Background

Plaintiff Melissa Kennedy was hired by the defendant in 2007
as a second grade teacher, and was a third grade teacher at the
time of her discharge on April 5, 2012.[3]  During the 2011-2012
school year, the plaintiff reported to Jill Cowart, who held the
position of assistant headmaster of the elementary division.[4]  From
2007 until the plaintiff's termination, Dr. Melanie Ezell was
headmaster of the school.  Ezell, rather than Cowart, had the
authority to make decisions regarding the plaintiff's employment
that would cause any significant change in benefits, such as
promotion, reassignment or termination.  Cowart reported to and
made recommendations to Ezell.

Certain events beginning in the summer of 2011 through the
2011-2012 school year are relevant to the summary judgment
analysis.  In June 2011 the plaintiff attended a meeting, held off
the school's campus, at which two school board members, other

---

[3] This background is not a complete summary of all the events
and facts relevant to the plaintiff's claims.  The background
included in this section is to provide a general overview of the
case.

[4] The previous school year Cowart held the position of
academic dean and the plaintiff did not report to her.

2

teachers and church members were present.[5]  At the meeting, the plaintiff answered questions and shared her concerns and complaints about Ezell and the school's current academics, policies and procedures.  Ezell later questioned the plaintiff about the meeting several times, and each time the plaintiff refused to discuss the meeting with Ezell.

When the plaintiff signed her contract for the 2011-2012 school year on April 25, 2011, Cowart expressed her concerns about renewing the plaintiff's contract.  Cowart stated her reasons were because of the plaintiff not being a team player, and her conflicts and inability to get along with her co-workers.[6]  At the beginning

_____

[5] The record contains inconsistent evidence as to the timing of this meeting.  Defendant's Statement of Uncontested Facts and Ezell's affidavit state it was held in the summer of 2010. Statement Number 8; Ezell affidavit, ¶ 5.  However, the plaintiff's deposition testimony, the statements of former school board members Mike Fowler and Bridget Denicola, and an email sent by board member Leroy J. Laiche, Jr., on June 29, 2011 indicate the meeting was held in June 2011.  Record document number 36-4, Exhibit 1, Plaintiff depo., pp. 163-64, 172; record document number 36-16, Exhibit 13; record document number 36-17, Exhibit 14, Fowler affidavit, ¶5; record document number 45-32, Exhibit 52, Denicola depo., p. 36.  For purposes of this ruling the court accepts the evidence that the meeting occurred in June of 2011.

Plaintiff stated in her deposition that she was called and invited to the meeting by non-board member Lori Smith.  According to Leigh Anne Rhodes testimony, Smith was a former school employee. Record document number 45-28, Exhibit 48, Rhodes depo., p. 68. Plaintiff stated that she was never told it was not an official board meeting.  Plaintiff depo., pp. 168-71, 176-77.  However, the plaintiff acknowledged and did not dispute that she refused to discuss the meeting when Ezell asked her questions about it. Plaintiff depo., pp. 199-201, 203.

[6] There is evidence that the plaintiff disagreed with Cowart's
(continued...)

of the 2011-2012 school year Cowart also met with the plaintiff and
Dona Robertson to express to them her concern about the third grade
teachers' lack of collaboration and problem solving.[7]  Throughout
the 2011-2012 school year, conflicts continued among the third
grade teachers. According to the plaintiff, every time Cowart met
with her, including at a meeting on March 16, 2012, Cowart told the
plaintiff that she had concerns about giving the plaintiff a
teaching contract for the following year.[8]

In November 2011 a student was moved from the plaintiff's
classroom to another third grade teacher's classroom.  The student
was moved based on information provided to Cowart from the guidance
counselor and a letter addressed to Cowart from the grandmother of
the student. In March 2012 Cowart also decided to move another

_____

[6](...continued)
definition of "team player," but there is no dispute that Cowart's
assessment was the plaintiff was not a team player.  Plaintiff
depo., pp. 54-55.

[7] During the 2011-2012 school year Dona Robertson was the
third grade level chairman.  Record document number 36-10, Exhibit
7, Robertson affidavit, ¶ 5.  When the plaintiff taught second
grade the plaintiff was a second grade level chairman.

[8] Record document number 36-4, Exhibit 1, Plaintiff depo., pp.
196-97.  On this point, the plaintiff's affidavit is inconsistent
with her deposition testimony.  In her affidavit the plaintiff
stated that Cowart did not continually express that she was not
sure she would renew her contract.  Record document number 45-10,
Exhibit 30, Plaintiff affidavit, ¶ 3.
To the extent a party's affidavit contradicts her prior
deposition testimony without explanation, she cannot use it to
create a genuine issue of material fact for trial.  *Doe v. Dallas
Ind. School Dist.,* 220 F.3d 380, 386 (5th Cir. 2000); *Avina v. JP
Morgan chase Bank, N.S.,* 413 Fed.Appx. 764 (5th Cir. 2011).

student out of the plaintiff's classroom. Cowart made the decision based on recent reports from the student's parents and the student, including some comments the plaintiff made to the student.[9] In the meeting Cowart had with the plaintiff on March 16, Cowart discussed the comment and circumstances which led to this student's transfer out of her class. After the meeting, Cowart decided that absent drastic changes in the plaintiff's school relationships, she would not recommend renewing the plaintiff's contract for the following school year.

On March 24, 2012 the plaintiff submitted a grievance letter to Fowler, who was the president of the school board. Some of the contentions and requests the plaintiff made in her grievance letter are summarized as follows: (1) Cowart and Ezell had failed to provide her with a safe place of work, and the combination of excessive workload, evaluations and workplace harassment exacerbated her asthma, which at times adversely affected her daily activities, impeding her "mobility and concentration within the working environment;" (2) Cowart used intimidation and bullying

---

[9] Through her verified complaint and affidavit, the plaintiff disputed whether the parents requested that the students be removed from her class. Plaintiff contends that Cowart stated it was her decision, without a request from parents, to move the students to a different teacher's class. Nevertheless, the plaintiff did not present any evidence to dispute the information regarding the students that was received by Cowart, or to dispute that as a result of receiving that information Cowart moved the students out of the plaintiff's class. Therefore, any dispute over whether the parents requested the move is not a material factual dispute.

tactics, questioned her educational philosophy and classroom decisions without factual support and discussed her in a negative light with peers and co-workers; (3) Cowart's harassment led to mobbing behavior by at least two of her fellow teachers; (4) Ezell continued to harass, intimidate and bully her into answering questions about the meeting in the summer held at the library; (5) Cowart and Ezell's harassing and intimidating actions posed a substantial risk of harm to her mental and physical health;[10] and, (6) despite being informed by the plaintiff and others of an incident that happened between two kindergarten students on the school playground in March 2012,[11] Cowart and Ezell failed to act promptly and adequately to address the incident to insure the health and safety of students. Plaintiff also stated in the letter her belief that she was the target of discrimination due to age, education and work experience. In the letter, the plaintiff requested that the school board suspend Cowart and Ezell, and asked that in any future meeting she had with Cowart or Ezell two or three school board members of her choosing also be present.

On April 3, 2012, Gina McCaughey, the defendant's director of human resources, met with the plaintiff about her grievance and

_____

[10] Describing the stress caused as a result, the plaintiff stated in her letter, "I often go about my duties in a state of autonomy or zombielike state; this is hardly conducive to a safe working environment." Record document number 36-8, Exhibit 5.

[11] This event is referred to hereafter as the "playground incident."

told the plaintiff how her complaints would be handled and investigated.  At that time, based on the health issues stated in her grievance, McCaughey offered the plaintiff paid medical leave with full salary for the remainder of the year.  Plaintiff rejected the offer of paid medical leave and told McCaughey she was able to perform her job duties.  During the meeting the plaintiff told McCaughey that she refused to meet with Ezell or Cowart for any reason.[12]  In an April 5, 2012, meeting with McCaughey and Ezell, Ezell, who had the  unanimous approval of the school board, terminated the plaintiff from her employment and tendered her remaining contract salary for the 2011-2012 school year.[13]  Plaintiff was 43 years of age when she was hired by the defendant, and was 47 when her teaching contract was terminated.

After her termination, the plaintiff filed this action against the defendant alleging discrimination, harassment and retaliation under the Age Discrimination in Employment Act ("ADEA") and the Americans With Disabilities Act ("ADA").  29 U.S.C. § 623(a)(1); 42 U.S.C. § 12112.  Plaintiff alleged that despite her outstanding employment evaluations, Ezell terminated her contract without cause on April 5, 2012. Plaintiff claimed that she was terminated because

---

[12] Record document number 36-7, Exhibit 4, McGaughey affidavit, ¶ 5.

[13] Record document number 1, Complaint, ¶ 5. Plaintiff had an approved absence from work on April 4, 2012 because of an earlier scheduled doctor appointment.  Record document number 36-25, Exhibit 22; record document number 45-7, Exhibit 17.

of her age and on the basis of her disability, as well as in retaliation for complaining of age and/or disability discrimination and harassment. Plaintiff also alleged that she was subjected to a hostile work environment based on age and disability. Some of the harassment alleged in the complaint was as follows: (1) plaintiff claimed she was treated differently than her co-workers, ignored, bullied, isolated and told not to talk during meetings or given additional responsibilities; (2) plaintiff was denied information and materials necessary to do her job; and (3) plaintiff was subjected to excessive evaluation of her classroom performance.

Defendant moved for summary judgment on all claims alleged by the plaintiff. With regard to the age discrimination claim, the defendant asserted that there is no evidence to support a prima facie case, or a reasonable inference that but for her age the plaintiff would not have been terminated. Defendant argued the plaintiff cannot show that she was replaced by someone younger or that similarly-situated younger employees were treated more favorably, nor can she refute its legitimate, non-discriminatory reasons for terminating her employment. Similarly, the defendant contended that summary judgment must be granted as to the plaintiff's claim of disability discrimination. According to the defendant, the plaintiff: (1) has no evidence to support the first essential element of her ADA claim - that she is disabled, has a

record of disability or is regarded as disabled; (2) has no evidence that any non-disabled employee similarly situated to her received more favorable treatment; and, (3) has no evidence to dispute the legitimate, non-discriminatory reasons for her termination.

Defendant argued that the plaintiff's retaliation claim fails because the plaintiff cannot establish that she engaged in protected activity under the ADA or ADEA. Defendant asserted the plaintiff merely complained generally of harassment, intimidation and bullying in the workplace that was unrelated to age or disability. Defendant argued that even if the plaintiff engaged in protected activity, the plaintiff has no evidence to dispute the legitimate reasons and timing of the decision to terminate her employment. Therefore, the plaintiff cannot carry her burden of establishing that she would not have been terminated but for engaging in protected activity.

Finally, the defendant maintained that summary judgment is warranted as to any claim the plaintiff alleged based on age or disability harassment. Defendant argued the plaintiff cannot show that any of the harassment she alleges was based on age or disability, nor can the plaintiff show that the alleged harassment was severe or pervasive.

In support of its motion the defendant submitted 25 exhibits consisting of deposition excerpts of the plaintiff and Leigh Ann

Rhodes, the affidavits of Cowart, Ezell, McCaughey, Robertson, Fowler, Laiche, Melissa Samson, Madison Gourney, Carol Garon, and Joana Dietrich, the plaintiff's March 24, 2012 grievance letter and the defendant's response to the grievance, emails related to the June 2011 library meeting and moving a student from the plaintiff's classroom, school counselor notes of November 16, 2011, March 13, 2012 parent concern form, April 16, 2012 letter from parents, March 16, 2012 meeting notes, a news report, age analysis, record of plaintiff's absences for the 2011-2012 school year, and a teacher observation schedule.[14] Defendant also filed a Statement of Uncontested Material Facts.[15]

Plaintiff asserted that all aspects of the defendant's motion should be denied. Plaintiff essentially argued that the record evidence shows that there are genuine, disputed issues of material fact that can only be resolved by the trier of fact. Plaintiff submitted 56 exhibits in opposition to the defendant's motion.[16] Plaintiff also filed a Statement of Contested Material Facts.[17]

## **Applicable Law**

Summary judgment is only proper when the moving party, in a

---

[14] Record document number 36-3, defendant's exhibit list.

[15] Record document number 36-2.

[16] Record document number 45-2, Plaintiff's Index of Exhibits.

[17] Record document number 45-1.

properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence, or resolve factual disputes. *Id.; Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). A genuine issue of material fact exists when the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. *Amerisure Ins. Co. v. Navigators Ins.Co.,* 611 F.3d 299, 304 (5th Cir. 2010).

On summary judgment, evidence may only be considered to the

extent not based on hearsay or other information excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001). In this case the court must apply the law applicable to discrimination, retaliation and harassment under the ADA and ADEA.

**ADEA Discrimination Claim**

Under the ADEA it is unlawful for an employer to fail or refuse to hire, discharge, or otherwise discriminate against any individual because of such individual's age. 29 U.S.C. § 623(a)(1). In employment discrimination cases a plaintiff may rely on direct or circumstantial evidence or both. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). The well-established *McDonnell Douglas*[18] framework is applied by the Fifth Circuit to consideration of claims based on circumstantial evidence brought under the ADEA.[19] To establish a prima facie case of age discrimination, a plaintiff must demonstrate that he or she was:

----

[18] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[19] *See*, *Reeves*, 530 U.S. at 141-42, 120 S.Ct. at 2105-06; *Smith v. City of Jackson, Mississippi*, 351 F.3d 183, 196 (5th Cir. 2003); *Jackson v. CalWestern Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

(1) within the protected age group under the ADEA - age 40 and above; (2) qualified for the position, (3) suffered an adverse employment decision, and (4) replaced by someone outside the protected group or someone younger, or treated less favorably than similarly situated younger employees, or was otherwise discharged because of his or her age. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003); *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013); *Maestas v. Apple, Inc.,* 546 Fed.Appx. 422 (Cir. 2013). There must be nearly identical circumstances for employees to be considered similarly situated. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007).

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. The burden is one of production, not persuasion, and "can involve no credibility assessment." *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, *citing*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of the picture. *Russell v. McKinney Hospital Venture*, 235 F.3d 219,

222 (5th Cir. 2000). The *McDonnell Douglas* framework with its presumptions and burdens disappears, and the only remaining issue is discrimination vel non. The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *Id.; Reeves*, *supra*. A plaintiff bringing an individual disparate treatment claim under the ADEA has the ultimate burden of proving that age was the but-for cause of the challenged adverse employment action. *Gross v. FBL Financial Services, Inc.,* 557 U.s. 167, 129 S.Ct. 2343, 2352 (2009).

**ADA Discrimination Claim**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of [a] disability in regard to ... [the] discharge of employees, ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Neely v. PSEG Texas, LTD. Partnership,* 735 F.3d 242 (5th Cir. 2012). To establish a prima facie case of discrimination under the ADA, a plaintiff must prove that she: (1) has a disability; 2) was qualified for the job; and, (3) was subject to an adverse employment decision on account of her disability. *EEOC v. LHC Group, Inc.,* ____F.3d____, 2014 WL 7003776 (5th Cir. Dec. 11, 2014), citing, *Zenor v. El Paso Cola Co.,* 176 F.3d 847, 853 (5th Cir. 1999).[20]

---

[20] Prior Fifth Circuit cases had stated the elements of a prima
(continued...)

The threshold issue in a plaintiff's ADA case is a showing that she suffers from a disability. *Neely,* supra; *Lanier v. Univ. of Texas Sw. Med. Ctr.,* 527 F. App'x 312, 318 (5th Cir.2013) (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999) (per curiam)). Merely having or being diagnosed with an impairment does not make one disabled for purposes of the ADA, one must also demonstrate that the impairment limits a major life activity, and not every impairment will constitute a disability within the meaning of the ADA. *Mann v. Louisiana High School Athletic Ass'n*, 535 Fed.Appx. 405 (5th Cir. 2013); 29 C.F.R. § 1630.2(j)(ii).

The term disability means, with respect to an individual: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life

---

[20](...continued)
facie case under the ADA were: (1) plaintiff has a disability; (2) plaintiff is qualified for the job; (3) plaintiff was subject of an adverse employment action; and, (4) plaintiff was replaced by a non-disabled person or treated less favorably than non-disabled employees. *See, Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir. 1995); *EEOC v. LHC Group, supra.*

activities also include major bodily functions, such as functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproduction functions. 42 U.S.C. § 12102(2)(B).

As amended by Congress in 2008, the ADA requires the Court to construe "[t]he definition of disability ... in favor of broad coverage of individuals ... to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Therefore, the most recent ADA regulations state that an impairment is a disability within the meaning of the ADA if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. However, an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. The comparison of an individual's performance of a major life activity to the performance of the same life activity by most people in the general population usually will not require scientific, medical, or statistical analysis, and should not demand an extensive analysis. 29 C.F.R. § 1630.2(j)(ii)-(v). The determination of whether an impairment substantially limits a major life activity must consider the impairment in its active state, without regard to the ameliorative effects of mitigating measures. 29 C.F.R. § 1630.2(j)(vi). In addition, after the 2008 amendments, the

duration or permanence of an impairment is no longer taken into consideration. 29 C.F.R. § 1630.2(j)(l)(ix); *Suggs v. Central Oil of Baton Rouge, L.L.C.,* 2014 WL 3037213 (M.D. La. July 3, 2014). *Mitchell v. City of Tupelo, Miss.*, 2014 WL 4540924, 6-7 (N.D. Miss., September 11, 2014); *Blackard v. Livingston Parish Sewer Dist.,* 2014 WL 199629 (M.D. La. January 15, 2014).

Under the ADA as amended, an individual is regarded as disabled if he or she was subjected to an action prohibited under the ADA, because of "an actual or perceived" impairment regardless of whether the impairment is, or is perceived to be, substantially limiting. 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(l)(1)-(3). Thus, the ADA no longer requires the employer to perceive the impairment as substantially limiting. *Suggs, supra.* However, employers may defend against a claim of "regarded as" coverage by proving the perceived impairment actually is "both transitory and minor." 29 C.F.R. § 1630.15(f). Whether the perceived impairment is transitory and minor is to be determined objectively. An employer may not defeat regarded as coverage "simply by demonstrating that it subjectively believed the impairment was transitory and minor." 29 C.F.R. § 1630.15(f).

The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position the individual holds or desires and, with

or without reasonable accommodation, can perform the essential functions of the position. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 678 (5th Cir. 2013).

If a party establishes a prima facie case of discrimination under the ADA, courts then engage in the McDonnell Douglas burden-shifting analysis. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir.2000). That is, after the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a "legitimate, non-discriminatory reason for the adverse employment action." McInnis, 207 F.3d at 280. If the employer meets its burden, then the burden returns to the plaintiff to show that the legitimate nondiscriminatory reason is simply pretext. Id. (citation omitted). "A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment." *Hammond v. Jacobs Field Servs.*, 499 Fed.Appx. 377, 380–81 (5th Cir.2012) (per curiam) (unpublished) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) and *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir.2009); *Owens v. Calhoun County School Dist.*, 546 Fed.Appx. 445, 448 (5th Cir. 2013).

Under the ADA the Fifth Circuit held in *Pinkerton v.*

*Spellings*,[21] that the causation standard under the ADA is a motivating factor test. The court explained that under the ADA discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the decision making process and have a determinative influence on the outcome. *Pinkerton*, 529 F.3d at 519, citing, *Soledad v. United States Department of Treasury,* 304 F.3d 500, 503-04 (5th Cir. 2002).[22]

Under the ADA, discrimination also includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A); *Feist, supra*; *Neely, supra*. A plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and

---

[21] 529 F.3d 513, 519 (5th Cir. 2008).

[22] Based on the Supreme Court decision in *Gross*, and the change in language in the ADA from "because of" disability to "on the basis of disability," a district court decision from Mississippi, citing some recent federal appellate court decisions, has stated that the "but for" causation standard should now be applied in ADA cases. *See*, *Johnson v. Benton County School Dist.,* 926 F.Supp.2d 899, 901-04 (N.D. Miss. 2013). However, the Fifth Circuit has recently stated that an individual can establish an employer is liable under the ADA by showing that their disability was a motivating factor in the employment decision. *EEOC v. LHC Group, Inc., supra.*

(3) the employer failed to make reasonable accommodations for such known limitations. Reasonable accommodations are not restricted to modifications that enable performance of essential job functions. *Id.*; 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(1).

**ADEA and ADA Retaliation Claims**

To establish a prima facie case of retaliation under the ADEA or ADA, a plaintiff must show: (1) that she engaged in activity protected by the ADEA or ADA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). To establish a retaliation claim under the ADA or ADEA, a plaintiff need not actually be disabled or a member of a protected class, but rather must have a reasonable good faith belief that the ADA or ADEA have been violated. *Id.*; *Tabatchnik v. Continental Airlines*, 262 Fed.Appx. 674 (5th Cir. 2008); *Butler v. Exxon Mobil Corp.,* 838 F.Supp.2d 473, 495 (M.D. La. 2012). Complaining about unfair treatment without specifying why the treatment is unfair is not a protected activity. *See, Harris-Childs v. Medco Health Solutions*, 169 Fed.Appx. 913 (5th Cir.2006); *Tratree v. BP North American Pipelines, Inc.*, 277 Fed.Appx. 390, 395 (5th Cir. 2008).

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that his protected activity was the sole factor

motivating the employer's challenged actions to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). A plaintiff alleging retaliation may satisfy the causal connection element by showing close timing between an employee's protected activity and an adverse action against him. *McCoy*, 492 F.3d at 562. Such temporal proximity must generally be very close. F*eist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.* 730 F.3d 450, 454 –455 (5th Cir. 2013).

If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ____U.S. ____, 133 S.Ct. 2517, 2533 (2013); *Feist*, 730 F.3d at 454; *Sherrod,* 132 F.3d at 1122. Therefore, a plaintiff making an ADEA or ADA retaliation claim must establish that her protected activity was a but-for cause of the alleged adverse action by the employer. This is a more demanding standard than the motivating-factor standard. *Nassar*, 133 S.Ct. at 2532-33.

To avoid summary judgment the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer

21

would not have taken the action "but for" the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir.1996). Evidence is substantial if it is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Temporal proximity, standing alone, is not enough. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *Hernandez v. Yellow Transp., Inc.* 670 F.3d 644, 658 (5th Cir. 2012).

**ADEA and ADA Harassment Claims**

A hostile-work environment, sufficient to give rise to an action under the ADEA or ADA, exists when the harassment is sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment. *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001) (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F .3d 558, 563 (5th Cir. 1998)); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011). A claim for age-based or disability-based harassment is modeled after similar claims under Title VII. *Id.; Ballard v. Healthsouth Corp.*, 147 F.Supp.2d 529, 536 (N.D. Tex. 2001). To succeed on this claim, a plaintiff must demonstrate: (1) that she belongs to a protected group under the ADEA and/or ADA - over the age of 40 and/or has a disability ; (2) that she was subjected to unwelcome harassment; (3) that the

harassment complained of was based on her age and/or disability; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) defendant knew or should have known of the harassment and failed to take prompt remedial action. *Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 509 (5th Cir. 2003); *Dediol*, 655 F.3d at 441.

For harassment to affect a term, condition or privilege of employment it must be both objectively and subjectively abusive – "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008), citing, *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275 (1998). Whether a working environment is objectively hostile or abusive is determined by considering the totality of the circumstances. Courts look to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance, and (5) whether the conduct undermines the plaintiff's workplace competence. *Hockman*, 407 F.3d at 325-26; *Walker v. Thompson*, 214 F.3d 615, 625-26 (5th Cir. 2000); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993).

Not all harassment will affect the terms, conditions, or privileges of employment. The mere utterance of an offensive

comment or remark which hurts an employee's feelings is not
sufficient to affect the conditions of employment. Simple teasing,
offhand comments, and isolated incidents, unless they are extremely
serious, are not sufficient to affect the terms, conditions or
privileges of employment. *Meritor Sav. Bank, FSB v. Vinson*, 477
U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

## Analysis

### ADEA Discrimination Claim

The defendant does not dispute the first three elements of the
plaintiff's prima facie case of age discrimination. Plaintiff was
qualified for her position, and at the age of 47 was in the
protected class of the ADEA when she was discharged on April 5,
2012. However, the defendant argued the plaintiff cannot establish
that she was replaced by someone outside the protected group or
someone younger, or that similarly situated individuals outside the
protected group received more favorable treatment. Defendant
argued further that the plaintiff cannot refute its legitimate,
non-discriminatory reason for terminating her employment. With
regard to the "old school" and "old way" comments the plaintiff
claimed were made by Cowart, the defendant asserted that even if
they occurred, the statements were stray remarks not made in
connection with the plaintiff's termination or by the supervisor
with the authority to make the employment decision. Therefore,

24

defendant argued, the comments are not direct evidence of age discrimination, nor are they sufficient to establish that age was the but-for cause for the plaintff's termination.

Analysis of the competent summary judgment evidence demonstrates that the plaintiff failed to come forward with sufficient evidence to create a genuine dispute of material fact for trial on her claim of age discrimination.[23]

Contrary to the plaintiff's arguments, the competent summary judgment evidence does not support a reasonable inference that the plaintiff was replaced the following school year by a much younger teacher.[24] McCaughey stated in her affidavit that in the 2011-2012 school year there were five sections of third grade and the following school year the number of sections was reduced to four.[25] Plaintiff did not dispute this evidence, but contended that she was replaced by a younger teacher because the teacher was hired when

---

[23] In ruling on the defendant's summary judgment motion and determining whether there is a genuine dispute for trail, the court did not consider unauthenticated exhibits, or inadmissible opinions, speculation and hearsay contained in the depositions, affidavits, declarations and other exhibits. Even if considered and credited, the excludable evidence is in large part either irrelevant, or consists of hearsay, speculation or opinions of non-decisionmakers, and would not change the conclusion that the plaintiff failed to come forward with sufficient evidence to create a genuine dispute for trial.

[24] Plaintiff stated that the teacher hired was much younger, but did not state the teacher's age. Record document number 43-11, Exhibit 30, Plaintiff affidavit, ¶ 11.

[25] Record document number 36-7, Exhibit 4, McCaughey affidavit, ¶ 7.

Rhodes, who had taught third grade, was moved to the fourth grade.

Contrary to the plaintiff's argument, the only reasonable inference which can be drawn from this evidence is that the younger teacher hired the next year to teach the third grade replaced Rhodes after she was moved to the fourth grade. A reasonable trier of fact could not infer that this teacher replaced the plaintiff, who was terminated well before the end of the school year when there were still five sections of third grade.[26]

Plaintiff also relied on statements in her Complaint, affidavit and deposition testimony, as well as the statements of some parents, teachers and others, that the defendant engaged in a pattern of replacing older, more experienced teachers with younger, less experienced teachers. Such vague and conclusory statements are not substantiated by any supporting facts, and are insufficient to support a reasonable inference that defendant's motivation for discharging the plaintiff was because of her age.

In addition, the plaintiff included in her Complaint the names of numerous individuals over the age of 40 who were terminated and

---

[26] Plaintiff's statement that Rhodes was moved to the fourth grade because the number of third grade sections dropped from five to four is confusing. Obviously, at the end of the 2011-2012 school year after the plaintiff's termination there were only four third grade teachers. At the beginning of the 2012-2013 school year there were four sections of third grade. Why would Rhodes, who taught third grade, have to be moved to the fourth grade because the number of third grade sections dropped? In addition, if the younger teacher was hired when Rhodes moved to fourth grade, how can it be that this new teacher was hired to replace the plaintiff?

replaced by younger individuals. Plaintiff also listed employees over the age of 40, who worked in different areas of the school - elementary, middle and high school, administrative/other - who were employed during the period from 2007 to 2012. Plaintiff stated either their contracts were not renewed or they were otherwise forced to leave. Without any facts as to the identity of the decisionmakers, when the employment decisions occurred, who applied for the job, or the specific circumstances that led to the particular employment decision, there is no basis to find that any of these employment decisions are relevant or somehow support a reasonable inference that the defendant decided to terminate the plaintiff because of her age. Furthermore, none of this evidence shows, nor did the plaintiff cite to any specific evidence which shows, that someone substantially younger or outside the protected ADEA class was similarly situated to her - engaged in similar conduct under similar circumstances - and was not discharged or otherwise received more favorable treatment.

Assuming the plaintiff presented sufficient evidence to support the elements of her prima facie case, the plaintiff failed to come forward with sufficient competent summary judgment evidence to dispute the defendant's evidence of its legitimate, nondiscriminatory reasons for discharging the plaintiff. Essentially this evidence is found in the affidavits of Ezell, Cowart, and McCaughey and several exhibits attached to McCaughey's

affidavit.[27]  As set forth in these affidavits and exhibits, the plaintiff was terminated because: (1) throughout the school year the plaintiff did not work cooperatively and had conflicts with the other third-grade teachers; (2) at several meetings during the school year Cowart expressed to the plaintiff her concerns about renewing her contract because of her lack of ability to get along with co-workers and not being a team player; (3) during the 2011-2012 school year issues arose with regard to two of the plaintiff's students that resulted in Cowart making a decision to move these students to another teacher's classroom; (4) after a meeting with the plaintiff on March 16, 2012, Cowart decided that absent drastic changes in the plaintiff's relationships she would not recommend renewal of the plaintiff's contract for the following school year; (5) the plaintiff submitted a workplace grievance letter on March 24, 2012, which was investigated by McGaughey, and after the investigation it was determined that the plaintiff's allegations were unsupported and that the plaintiff had engaged in unprofessional and insubordinate conduct with regard to her co-workers, the school, and its administrators; and (6), after the conclusion of the investigation Ezell made the decision to terminate the plaintiff's employment effective April 5, 2012.

---

[27] Record document number 36-7, Exhibit 4, McCaughey affidavit; record document number 36-8, Exhibit 6, documents referenced in McCaughey affidavit related to investigation; record document number 36-5, Exhibit 2, Cowart affidavit; record document number 36-6, Exhibit 3, Ezell affidavit.

Defendant also submitted uncontradicted evidence that at the time of the plaintiff was terminated: (1) three of the five third grade teachers were over the age of 40;[28] and (2) in the years 2012 and 2013 there was no change in the number of elementary teachers over and above the age of 40 - there were 17 teachers below the age of 40 and 14 teachers above the age of 40.[29]

Plaintiff submitted a large volume of evidence which she contends refutes these legitimate, non-discriminatory reasons. For example, the plaintiff submitted her own affidavit and deposition testimony, declarations and deposition testimony from some parents, other teachers, an administrator, and a former school board member.[30] The substance of this evidence generally consisted of:

---

[28] Record document number 36-7, McGaughey affidavit, ¶ 7. Third grade level chairman Robertson stated in her September 2014 affidavit that she was 58 years old. Therefore, in April 2012 Robertson was either 55 or 56 years old. Record document number 36-10, Exhibit 7, Robertson affidavit, ¶ 4.

[29] Record document number 36-7, Exhibit 4, McGaughey affidavit, ¶ 4; record document number 36-24, Exhibit 21.

[30] Record document numbers 45-10 and 45-16, Exhibit 30 (including 30a and 36), Plaintiff affidavit; record document number 45-6, Exhibit 12, Plaintiff deposition excerpts; record document number 45-14, Exhibit 34, Denicola declaration; record document number 45-21, Exhibit 41, Shan Russel declaration; record document number 45-26, Exhibit 46, Danna Sabolik deposition; record document number 45-27, Exhibit 47, Donald Green deposition excerpts; record document number 45-28, Exhibit 48, Leigh Anne Rhodes deposition excerpts; record document number 45-29, Exhibit 49, Lori Abshire deposition excerpts; record document number 45-30, Exhibit 50, Harold Salles, III deposition excerpts; record document number 45-31, Exhibit 51, Tom Walton deposition excerpts; record document number 45-32, Exhibit 52, Denicola deposition excerpts; record
(continued...)

(1) opinions regarding the nature of the conflicts between the third grade teachers and who was to blame for the conflicts; (2) opinions of others regarding the plaintiff's excellent classroom planning/teaching, and good character; (3) plaintiff's statements that Cowart told her on March 16, 2012 the moving of a student out of the plaintiff's class was without the parents asking for the student to be moved; (4) opinions that Cowart and Ezell were intimidating and making poor school policy and curriculum decisions; (5) opinions that Ezell and Cowart failed to properly investigate and address the playground incident as well as the plaintiff's grievances; (6) opinions of some parents, students and an administrator, who disagreed with the decision to terminate the plaintiff and the manner in which it was done.

All of the competent summary judgment evidence contained in these exhibits has been carefully reviewed, and none of it refutes the legitimate, non-discriminatory reasons the defendant gives for its adverse employment action against the plaintiff. Both the plaintiff and other witnesses acknowledged the ongoing conflicts and lack of collaboration among the third grade teachers. The fact that the plaintiff and others have different opinions about how to characterize the conflict, and who is to blame for the conflict,

[30](...continued)
document number 45-33, Exhibit 53, Tuesdai Johnson declaration; record document number 45-34, Exhibit 54, Lelia Johnson declaration; record document number 45-35, Exhibit 55, Ashley McReynolds declaration.

does not dispute the fact that the conflict existed, or that the plaintiff was counseled and informed by Cowart it was a concern that might lead to the plaintiff's termination. Nor does the fact that the plaintiff's was a capable, competent classroom teacher of good character raise a material factual dispute regarding the defendant's legitimate, non-discriminatory reasons. Defendant did not contend or offer evidence that poor teaching skills or questionable character were reasons for its decision to discharge the plaintiff.

In her verified Complaint and affidavit the plaintiff also disputed Cowart's statements that the parents had requested the change when the student was moved out of her class in March 2012.[31] Assuming the plaintiff's statements are true, they do not create a material factual dispute with regard to the defendant's legitimate, non-discriminatory reasons. Even if there is a factual dispute over whether the parents made the request, the essential underlying facts on which Cowart based her decisions remain uncontested. Moreover, a single factual dispute related to one of the defendant's multiple reasons does not amount to substantial evidence that the legitimate, nondiscriminatory reasons proffered

---

[31] Record document number 36-5, Exhibit 2, Cowart affidavit, ¶ 13; record document number 45-10, Exhibit 30a, plaintiff's response to Cowart affidavit, ¶ 13; record document number 1, Complaint, ¶ 20.

by the defendant were false and a pretext for age discrimination.[32]

Finally, the personal views of the plaintiff and others, such as parents, teachers, other school administrators, or school board members, that Ezell and Cowart were poor administrators who did not communicate well with teachers, or made poor school policy and academic decisions that hurt the school, or failed to adequately handle the playground incident to insure the safety of students, or should not have fired the plaintiff, or should not have carried it out in the manner they did, are simply not relevant facts that dispute the defendant's legitimate, non-discriminatory reasons for terminating the plaintiff.

The only other evidence the plaintiff cited was statements she claimed that Cowart made about her age in early 2012. Plaintiff stated in her verified Complaint that in January 2012 Cowart went into her classroom and "inferred that in plaintiff's old age, she needed to take it easy and told plaintiff to stop grading so much."[33] According to the plaintiff, sometime in 2012 during a discussion with parents regarding one of her students, Cowart told the parents:

_____

[32] Showing pretext requires a plaintiff to produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003). A plaintiff must present facts to rebut each of the nondiscriminatory reasons articulated by the employer. *Id.; Wallace v. Methodist Hosp. System,* 271 F.3d 212, 220 (5th Cir. 2001).

[33] Record document number 1, Complaint, ¶ 22.

> [T]hat plaintiff was "old school" and did grades the "old
> way," at which time Cowart dismissed plaintiff's
> authority to grade spelling. And was told to stop
> grading so much.[34]

Cowart denied she made the comments, but for purposes of this motion the court assumes that she did. Nevertheless, in the context of the entire summary judgment record, considering these comments in the light most favorable to the plaintiff, they fail to create a genuine dispute for trial on the plaintiff's claim she was discharged because of her age.[35]

First, it is not clear from the Complaint that Cowart even made the statement that "in plaintiff's old age, she needed to take it easy." Plaintiff did not allege that Cowart actually made this statement. Rather, the plaintiff alleged that Cowart "inferred" it, meaning that the allegation is the plaintiff's interpretation of what Cowart said. Plaintiff's assertion that Cowart "inferred" the plaintiff needed to take it easy in her old age is clearly not the same thing as alleging that Cowart actually said it. Second, Ezell terminated the plaintiff and was the final decisionmaker. Although is it undisputed that Cowart made recommendations to

---

[34] Record document number 1, Complaint, ¶ 20. It is not clear when this comment was made. It appears from the plaintiff's EEOC charge that it was the end of January or the first week of February 2012. Record document number 45-4, Exhibit 5, EEOC charge No. 461-2012-01389.

[35] Age-related comments that do not constitute direct evidence of discrimination may be circumstantial evidence used to demonstrate pretext, or as additional evidence of discrimination. *See*, *Maestas, supra; Suggs, supra.*

Ezell, the plaintiff presented no evidence that Ezell merely acted as a rubber stamp for Cowart's decisions, or that when Ezell decided to discharge the plaintiff in April 2012 Cowart was exerting influence or leverage over Ezell's decision.[36] Given the plaintiff's failure to present any evidence to dispute the defendant's legitimate, nondiscriminatory reasons, or any evidence that younger, similarly situated individuals not protected under the ADEA were treated more favorably than her, Cowart's isolated, vague and remote comments made two months before Ezell's decision are not sufficient for a reasonable trier of fact to infer pretext and that but for the plaintiff's age the defendant would not have terminated the plaintiff's employment.

**ADA Discrimination Claim**

Defendant argued that the plaintiff cannot establish the threshold element of her prima facie case under the ADA – that she is disabled or was regarded as disabled. Review of the competent summary judgment evidence shows that the defendant's argument has merit insofar as the plaintiff alleged that the defendant regarded her as disabled. However, the record contains sufficient evidence from which a reasonable trier of fact could find the plaintiff's

---

[36] Discriminatory animus of a manager can be imputed to the ultimate decisionmaker if there is evidence the decisionmaker acted as the rubber stamp or cat's paw for the manager's prejudice. The relevant inquiry is whether the subordinate employee had influence or leverage over the decisionmaker. *See*, *Laxton*, 333 F.3d at 583–84; *Russell*, 235 F.3d at 225–28.

asthma is a disability under the current ADA standards.

The parties did not cite the correct law applicable to the plaintiff's ADA claim.[37] As set forth in detail in the applicable law section, the ADA was amended in 2008, resulting in a significant change in the definitions applied to the threshold issue of whether an individual is disabled under the ADA. The purpose of the amendment was to define disability in favor of broad coverage of individuals. Among other changes, in determining whether an impairment substantially limits a major life activity the impairment in its active state must be considered, without regard to mitigating measures that reduce the effects of the impairment or the duration or permanence of an impairment. An individual who claims an employer "regarded" her as disabled no longer is required to prove the employer perceived the impairment as substantially limiting.[38]

On the issue of whether the plaintiff was "regarded as" disabled, the defendant cited and relied on the plaintiff's deposition testimony, and evidence contained in the affidavits of

---

[37] Record document number 36-1, Memorandum in Support of Motion for Summary Judgment, pp. 20-22; record document number 45, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 45.

[38] The amended ADA primarily focuses on broadening the definition of disability by singling out and superseding *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139 (1999); *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.s. 184, 122 S.Ct. 681 (2002). *Neely,* 735 F.3d at 244.

Cowart, Ezell and McCaughey. Plaintiff testified that she believed she was perceived as disabled because she had to take so much sick leave.[39] Yet, the uncontested evidence shows that in 2010-2011 school year the plaintiff had 28 days of sick leave available and used 7 days, and in 2011-2012 school year had 29 days available and by April 5, 2012 had used 12 days. McGaughey explained that in the meeting on April 3, 2012 the plaintiff was offered paid leave due to the health issues the plaintiff included in her March 24 grievance letter, but the plaintiff rejected the offer and stated she was not disabled and was capable of performing her job duties.[40] Cowart and Ezell both attested they did not have any knowledge the plaintiff used more than her accrued sick leave or had an excessive number of absences, nor did the plaintiff ever request from them any accommodation or relief due to an illness or infirmity.[41]

Plaintiff did not come forward with any evidence to dispute these facts. Plaintiff merely relies on her subjective belief that she was perceived as disabled and some deposition testimony from another third grade teacher who said that she heard a rumor at

---

[39] Record document number 36-4, Exhibit 1, Plaintiff depo., pp. 72-75. Plaintiff was asked if in 2011 and 2012 she ever told anyone that she was disabled. Plaintiff answered: "I don't go around talking about that, no." *Id.* at 75.

[40] Record document number 36-7, Exhibit 4, McGaughey affidavit, ¶¶ 4, 5 and 8; record document number 36-25, Exhibit 22.

[41] Record document number 36-5, Exhibit 2, Cowart affidavit, ¶ 22; record document number 36-6, Exhibit 3, Ezell affidavit, ¶ 8.

school the plaintiff was on "painkillers or something like that."[42] Plaintiff's subjective belief is supported only by hearsay testimony; her belief clearly does not refute the defendants's evidence or create a genuine factual dispute for trial on the question of whether the defendant regarded her as disabled.

Under the amended ADA definition of disability, the ameliorative effects of medication that allow an individual to perform her job duties and the duration of an impairment are no longer relevant. Furthermore, to prove an impairment substantially limits a major life activity, an individual is not required to demonstrate the impairment prevents or significantly or severely restricts the performance of a major life activity.[43] The record contains evidence consisting of the plaintiff's testimony and statements about her asthma and treatment for asthma and the effects of the condition and treatment on her ability to breathe.[44] Credited and viewed in the light most favorable to the plaintiff, this evidence would be sufficient for a reasonable trier of fact to

_____

[42] Record document number 45-28, Exhibit 48, Rhodes depo., p. 38.

[43] Under the amended ADA determining whether an individual is substantially limited in a major life activity as compared to most people in the general population, usually will not require an extensive analysis or scientific, medical or statistical analysis. 29 C.F.R. § 1630.2(j)(ii)-(v).

[44] Record document number 36-4, Exhibit 1, Plaintiff depo., pp. 72-75; record document number 36-8, Exhibit 5; record document number 45-10, Exhibit 30a.

find that the asthma impairment, in its active state, substantially limited the plaintiff's breathing and respiratory functions as compared to most people in the general population.

Defendant did not argue that the plaintiff cannot prove the next two elements of her ADA prima facie case - plaintiff was qualified for her job and was subject to an adverse employment action. Defendant argued, however, that the plaintiff has no evidence she was replaced by a non-disabled person or treated less favorably than non-disabled employees.

The summary judgment record supports the defendant's argument. As explained in the ADEA analysis, the plaintiff stated in her affidavit that she was replaced the following school year by a much younger, non-disabled teacher, but failed to provide facts that supported this assertion. Nor did the plaintiff present any evidence that non-disabled employees who were similarly situated to her received more favorable treatment from the defendant.

Since the parties filed their memoranda, the Fifth Circuit in *EEOC v. LHC Group* has clarified the law governing a prima facie case when the plaintiff alleges a discriminatory termination in violation of the ADA. The court stated that in such cases a plaintiff is not required to present proof she was replaced by or treated less favorably than a non-disabled employee. The court stated that the third element of the prima facie case is evidence of a causal nexus - she was subject to an adverse employment action

on account of her disability.

Assuming the plaintiff could establish this element of her prima facie case based on the timing of her termination, the defendant has produced evidence that the plaintiff was terminated for a legitimate, non-discriminatory reason unrelated to her disability. This evidence is set forth above in the analysis of the plaintiff's ADEA claim. For the same reasons explained in the analysis of the ADEA claim, the evidence on which the plaintiff relies does not dispute the defendant's legitimate, non-discriminatory reasons. Evidence of a prima facie case, without evidence to dispute the defendant's legitimate, nondiscriminatory reasons, is insufficient for a reasonable trier of fact to find the defendant's explanation for terminating the plaintiff is a pretext for discrimination based on her disability. Nor is the evidence sufficient for a reasonable factfinder to conclude that disability was a motivating factor in the defendant's adverse employment decision. It is undisputed, that after the plaintiff submitted her grievance letter, the plaintiff unequivocally told the defendant that she was fully capable of performing all of her job duties, and she did not request any accommodations for her asthma or any other condition. Given these facts and the absence of any evidence to dispute the defendant's legitimate reasons or its underlying investigation, the fact that the plaintiff was terminated approximately two weeks after she filed her grievance is

insufficient evidence from which a reasonable trier of fact could find that disability was a motivating factor in the plaintiff's termination.

To the extent the plaintiff asserted a claim for failure to accommodate under the ADA, the plaintiff presented no competent summary judgment to support it. Plaintiff appeared to argue that there is a genuine dispute for trial on a failure to accommodate claim based on whether the defendant provided reasonable accommodations and engaged in an interactive process regarding her request for proper classroom air conditioning. There is summary judgment evidence that the plaintiff had to take sick leave in August 2011 when the air conditioning was not functioning properly in her classroom.[45] However, there is no evidence that when this incident occurred the plaintiff initiated some interactive process that the defendant failed to engage in, or that the defendant denied the plaintiff's request for sick leave or any other accommodation.[46]

**ADEA and ADA Retaliation Claims**

Defendant argued that the plaintiff cannot establish a prima

---

[45] Record document number 45-10, Exhibit 30a.

[46] Plaintiff's record of absences for 2011-2012 shows the plaintiff had excused absences for sick leave on August 19 and August 23, 2011. Record document number 36-25, Exhibit 22. Plaintiff did not argue or present any evidence that problems with the air conditioning in her classroom reoccurred or continued after August 2011.

facie case of retaliation under the ADEA or ADA because her complaints expressed at the library meeting, in her grievance letter and in a news report were not protected activity. According to the defendant, the plaintiff's complaints can only be characterized as complaints the school was not being properly run by the administrators and that she was subjected to generalized bullying, harassment and intimidation. Defendant argued further that even if the plaintiff has evidence of a prima facie case, it is still entitled to summary judgment because the plaintiff has no evidence to dispute its legitimate, non-retaliatory reasons for terminating her employment.

Defendant's argument on this issue is not persuasive. Plaintiff's complaints in her March 24, 2012 grievance letter, viewed in the light most favorable to the plaintiff,[47] are facts from which a reasonable trier of fact could find that the plaintiff was complaining that she was being subjected to discrimination or harassment based on her age and/or disability.[48] Nevertheless, the record demonstrates that the defendant is entitled to summary

_____

[47] Plaintiff's statements in the news report occurred after her termination, and there is no evidence the plaintiff complained about age or disability discrimination at the library meeting. Record document number 35-23, Exhibit 20; record document number 36-17, Exhibit 14, Mike Fowler affidavit, ¶ 5; record document number 36-4, Plaintiff depo., pp. 166, 170-181.

[48] For a retaliation claim under the ADA or ADEA, the plaintiff is only required to show that she had a reasonable good faith belief that the employer was engaged in employment practices that violated the statutes. *Tabatchnik, supra; Butler, supra.*

judgment on the retaliation claims under the ADEA and ADA.

Defendant has come forward with a legitimate, non-retaliatory reason for terminating the plaintiff, which is the same as the legitimate, non-discriminatory reasons set forth in the analysis of the plaintiff's age and disability discrimination claims. Again, for the same reasons explained in the analysis of these claims, the evidence on which the plaintiff relies does not dispute the defendant's legitimate reasons. The only competent, relevant summary judgment evidence the plaintiff presented to support her retaliation claim is the timing of her termination in relation to her complaints. Plaintiff's grievance letter is dated March 24 and plaintiff was discharged twelve days later on April 5. However, this close timing, without sufficient evidence to dispute the defendant's legitimate, non-retaliatory reason for the adverse employment action and show pretext, is not enough evidence for a reasonable trier of fact to conclude that but for the plaintiff's complaints about age and disability discrimination, the plaintiff would not have been terminated.[49]

**ADEA and ADA Harassment Claim**

Defendant argued that summary judgment should be granted as to

---

[49]     Sole evidence of close timing, when legitimate, non-retaliatory reasons for employment action are undisputed, is insufficient evidence to support a finding of retaliation. *See, Roberson v. Alltel Information Services,* 373 F.3d 647, 656 (5th Cir. 2004); *Feist*, 730 F.3d at 453; *Strong v. University Healthcare System, L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007).

the plaintiff's age and disability-based harassment claims because the plaintiff cannot establish that the harassment she complains of was based on her age or disability, or that it was severe or pervasive. Based on a careful review of the competent summary judgment evidence, the defendant's arguments are persuasive – no reasonable trier of fact could find in favor of the plaintiff on these essential elements of her harassment claims.

Plaintiff testified to her personal belief that the defendant came after her because of her age and disability. But no competent summary judgment evidence contains specific facts which support a reasonable inference that the plaintiff's complaints of harassment, or what the plaintiff also referred to as "bullying," was motivated by age or disability discrimination.[50] Even if there were such facts, the plaintiff failed to come forward with sufficient evidence from which a reasonable factfinder could conclude that the harassment was severe or pervasive.

For the purpose of this motion the court accepts that the plaintiff believed she was harassed through excessive evaluations, lack of teaching resources, being ignored and isolated in meetings, not given extra responsibility or committee assignments, being asked about the library meeting, and being discussed in a negative light with parents and other teachers. The law requires that work-

---

[50] Record document number 1, Complaint, ¶¶ 19, 33-35; record document number 36-8, Exhibit 5.

place harassment be extreme and affect a term, condition or privilege of employment.[51] To do so it must go beyond behavior that is rude or offensive; it must be sufficiently pervasive or severe both objectively and subjectively. Under the applicable standard, a reasonable trier of fact could not find that the conduct the plaintiff complained about was objectively severe or pervasive such that it altered the terms and conditions of her employment.

The incidents alleged by the plaintiff occurred over approximately a two year period.[52] Plaintiff testified that she was excessively evaluated in 2010-2011, but not the following school year. Plaintiff did not dispute that some additional evaluations were required because of the implementation of a new curriculum. Moreover, the plaintiff acknowledged that all of the evaluations she received were positive. Plaintiff also did not dispute that during the relevant school years other third grade and elementary teachers had issues regarding lack of resources/books needed for teaching the curriculum, and that Cowart did not like anyone asking questions in meetings with her. None of this conduct, nor any of the other conduct alleged by the plaintiff, involved actions that

---

[51] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). The Supreme Court has made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment. *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2284.

[52] Plaintiff stated in her grievance letter that in 2010-2011 she was evaluated 15 times by administration. Plaintiff stated in the letter that every one was an "exceptional evaluation."

were physically threatening/humiliating; it was all verbal.[53]

The evidence as a whole also does not support a reasonable inference that the alleged conduct prevented the plaintiff from successfully performing her job as a classroom teacher. Plaintiff asserted in her grievance letter various affects on her daily activities caused by harassment, and she provided evidence of an incident where she was taken from school to the emergency room in September 2010. However, the plaintiff always maintained and advised the defendant that she was fully capable of performing her job duties. Plaintiff's record of absences was well below the number of days she was allowed and her absences were never considered excessive by the school administration. Given these facts and the consistently positive evaluations received by the plaintiff, a reasonable trier of fact could not find that the harassment the plaintiff described in any way undermined her competence or interfered with her job performance.

## Conclusion

If the disputed issues to be resolved in this case were who should be found at fault for the conflicts among the third grade

---

[53] See, record document number 36-4, Exhibit 1, Plaintiff depo., pp. 53-55, 64, 72-74, 83-86, 201; record document number 36-12, Exhibit 9, Rhodes depo., 82, 84-86; record document number 45-10, Plaintiff affidavit, ¶¶ 3 and 5; record document number 1, Complaint, ¶¶ 9, 33-35; record document number 36-26, Exhibit 23, Deitrich affidavit, ¶¶ 3-5; record document number 36-10, Exhibit 7, Robertson affidavit, ¶¶ 5, 8 and 9; record document number 36-5, Exhibit 2, Cowart affidavit, ¶¶ 16-20.

teachers, or whether Ezell and Cowart's academic, faculty and other policy decisions were correct or in the best interest of the school, then the plaintiff's evidence would arguably be sufficient to create a genuine dispute for trial. However, it is well established that in discrimination and retaliation cases, the issue is not whether the employer's decision was incorrect or unfair. Instead, the issue is whether the decision was motivated by unlawful discrimination and retaliation - in this case a decision based on age or disability in violation of the ADEA and ADA. On the essential elements of these claims, the analysis above demonstrates that no reasonable trier of fact could find in favor of the plaintiff on her claims of discrimination, retaliation and harassment under the ADEA and ADA.

Accordingly, for these reasons the Motion for Summary Judgment filed by the defendant Parkview Baptist School is granted.

Baton Rouge, Louisiana, December 24, 2014.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE